STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBERT KAINOA PAHIO, Defendant-Appellant

NO. 5945

SEPTEMBER 9, 1977

RICHARDSON, C.J., KOBAYASHI, OGATA, MENOR and KIDWELL, JJ.

OPINION OF THE COURT BY RICHARDSON, C.J.

On the afternoon of July 6, 1974, the prosecutrix was raped while in a building located at 378 North School Street. Forty-five minutes after the rape and a block away, police arrested defendant-appellant. When he was returned to the scene of the crime, the prosecutrix identified him as her assailant. He was tried and convicted by a jury for the offense of rape in the first degree. He appealed from the judgment entered in conformity with the verdict raising two issues as follows:

(1) Whether the trial judge erred in admitting appellant's inquiry about his slippers, and

(2) Whether the trial judge erred in refusing to give appellant's requested identification instruction.

Appellant does not contend that the evidence was insufficient to support the verdict. Indeed, the State presented substantial direct and circumstantial evidence of his guilt, but we discuss only those facts relevant to the issues he has raised.

### THE INQUIRY

When appellant was arrested, he was wearing a white T-shirt with a red line on the back. The substance that made the red line was identical to the substance in the red felt pen used by the rapist to intimidate the prosecutrix.

Brown slippers were found in the room where the rape occurred. They were not there before the prosecutrix was attacked. Appellant was wearing a pair of green slippers when arrested, and the police noticed that they were an inch-and-a-half too small.

Appellant was brought to the police station and given warnings pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966) and *State v. Santiago*, 53 Haw. 254, 492 P.2d 657 (1971).[1] He did not want to make a statement, and he did want an attorney.

During the trial Detective Freitas testified that after appellant asserted his right to remain silent and right to the presence of an attorney, the detective said: "Okay, since you're not going to answer my questions, I got your white T-shirt with the red line on and I also have a pair of brown slippers, rubber slippers to be kept as evidence. Let's go back to the cellblock." The detective then testified that he escorted appellant back to the cellblock which was a minute-and-a-half away. The detective was about to testify as to what appellant said as he was closing the cellblock door. Before he could testify further, defense counsel objected on the ground of hearsay. Subsequently the trial judge held a hearing outside of the presence of the jury to determine the

---

[1] In *Santiago* we held that "protections which the United States Supreme Court enumerated in *Miranda* have an independent source in the Hawaii Constitution's privilege against self-incrimination." 53 Haw. at 266, 492 P.2d at 664.

admissibility of what appellant said. The prosecutor restated the detective's previous testimony and told the trial judge that the detective would testify that appellant said to the effect, "Where's my brown rubber slipper?" He argued that the question was a voluntary admission. Defense counsel argued that appellant involuntarily asked the question. The trial judge overruled defense counsel's objection. After the jury returned, Detective Freitas testified that as he was closing the cellblock door, appellant said, "Where's my brown slippers?"

Appellant contends that the trial judge erred in admitting his question. In support of his contention, he relies on *Miranda*. In that case, to protect an individual's Fifth and Fourteenth Amendment privilege not to be compelled to incriminate himself during custodial interrogation,[2] the Supreme Court promulgated procedural safeguards as follows:

> He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him.

384 U.S. at 479 (footnote omitted). Appellant argues that his question was inadmissible because it was a result of the

---

[2] The Court defined "custodial interrogation" as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." 384 U.S. at 444 (footnote omitted); *accord*, State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975).

"Interrogation" within the meaning of *Miranda* is questioning initiated by law enforcement officers.

detective's statement which, in turn, was custodial interrogation; and the State failed to demonstrate at trial that he waived his right to remain silent or his right to the presence of an attorney.

The State continues to contend that appellant's question was a voluntary admission. It argues that *Miranda* is inapplicable because the detective's statement was not interrogation; therefore appellant's question was not obtained as a result of interrogation.

Unless and until the warnings and waiver required by *Miranda* are demonstrated by the prosecution at trial, under *Miranda* the prosecution may not use evidence obtained from the defendant against him if such evidence resulted from custodial interrogation. *See* 384 U.S. at 444, 479. However, *Miranda* fails to restrict the prosecution's use of such evidence if it did not result from custodial interrogation.

Since the appellant was in custody when the detective made his statement, our concern is whether appellant's question resulted from questioning initiated by the detective. Questions ask for a response. Statements may or may not ask for a response. To determine whether appellant's question resulted from questioning by the detective, we must first determine whether the detective's statement was tantamount to a question and if so, whether appellant's question resulted from the detective's statement. To determine whether the detective's statement was tantamount to a question, we must determine whether his statement asked for a response.

*Brewer v. Williams*, 45 U.S.L.W. 4287 (Decided Mar. 23, 1977), provides an example of the making of statements tantamount to interrogation. In that case the defendant abducted and murdered a girl. He then surrendered to the Davenport, Iowa, police and was arraigned before a Davenport judge. Since the warrant for his arrest was issued in Des Moines, its police drove to Davenport to return the defendant to Des Moines. Defendant's counsel was denied permission to accompany him on the return trip. During the 160-mile drive from Davenport to Des Moines, one of the detectives delivered what has been referred to as the "Christian burial

speech''. Knowing that the defendant was deeply religious, the detective said:

> I want to give you something to think about while we're traveling down the road . . . . Number one, I want you to observe the weather conditions, it's raining, it's sleeting, it's freezing, driving is very treacherous, visibility is poor, it's going to be dark early this evening. They are predicting several inches of snow for tonight, and I feel that you yourself are the only person that knows where this little girl's body is, that you yourself have only been there once, and if you get a snow on top of it you yourself may be unable to find it. And, since we will be going right past the area on the way into Des Moines, I feel that we could stop and locate the body, that the parents of this little girl should be entitled to a Christian burial for the little girl who was snatched away from them on Christmas Eve and murdered. And I feel we should stop and locate it on the way in rather than waiting until morning and trying to come back out after a snow storm and possibly not being able to find it at all.

45 U.S.L.W. at 4289. The Court held that the defendant was denied his Sixth and Fourteenth Amendment right to the assistance of counsel[3] when the detective interrogated him by delivering the speech.

In the case before this court, the detective told the appellant that he was keeping his shirt and a pair of slippers as evidence. This did not ask for a response immediately or ever, as contrasted with the "Christian burial speech" in *Brewer* which clearly asked the defendant to respond to the suggestion that they stop and locate the victim's body.

Appellant cites *Combs v. Wingo*, 465 F.2d 96, 99 (6th Cir.

---

[3] A right not involved here because adversary judicial proceedings had not yet been initiated against appellant. *See* Kirby v. Illinois, 406 U.S. 682, 688 (1972).

Furthermore, we see no reason to distinguish the making of statements tantamount to interrogation under *Brewer* for Sixth Amendment purposes from the making of statements tantamount to interrogation under *Miranda* for Fifth Amendment purposes.

1972), where the court characterized the reading of the ballistics report on a rifle and bullet as an implied question, and *Commonwealth v. Mercier,* 451 Pa. 211, 214, 302 A.2d 337, 340 (1973), where the court concluded that the reading of an accomplice's statement which implicated the defendant in the crime was interrogation.[4] We are of the opinion that in both cases the courts believed that the statements asked for a response. We have no quarrel with either case; however, we recognize that the decision as to whether a statement asks for a response depends on the particular statement and on the learned opinion of the deciding court. We have concluded that the detective's statement did not ask for a response.

Since the statement did not ask for a response, it was not tantamount to a question. Appellant's question did not result from any questioning by the detective; therefore *Miranda* fails to restrict its use by the State.[5] Nevertheless, we still must determine whether the trial judge properly admitted appellant's question as a voluntary admission.

> The trial judge has a duty to determine the admissibility of an inculpatory statement out of the presence of the jury and prior to the jury's exposure to such evidence. *See Jackson v. Denno,* 378 U.S. 368 (1964); HRS § 621-26. In order to effectuate this duty, the trial judge is vested with wide discretion to determine the credibility of the witnesses and to weigh the evidence in order to ascertain whether the prerequisites to admissibility are present.

*State v. Green,* 51 Haw. 260, 264, 457 P.2d 505, 508 (1969).

> This court has consistently maintained that where there is more than a scintilla of evidence to sustain the conclusion of the trial judge that the statement was voluntarily

---

[4] *But see* Howell v. State, 5 Md. App. 337, 338-39, 247 A.2d 291, 292 (1968), *cert. denied,* 396 U.S. 907 (1969), where the court concluded that there was no interrogation of the defendant when the police told him the statements of an accomplice which implicated him in the crime.

[5] The protections enumerated in *Miranda* under the Hawaii Constitution's privilege against self-incrimination also fail to restrict its use by the State.

made the [admission or the] confession may be accepted into evidence. *Territory v. Patterson*, 38 Haw. 245.

*State v. Foster*, 44 Haw. 403, 412-13, 354 P.2d 960, 966 (1960) (material added).

By the time the hearing was conducted to determine the admissibility of appellant's question, more than a scintilla of evidence had been presented to sustain the trial judge's conclusion that the question was voluntarily asked. Before appellant asked his question, he knew that he was not required to make any statement to the police. The police did not question him other than to ask him whether he desired to exercise his rights. If the trial judge was of the opinion that appellant believed that Detective Freitas' statement referred to his brown slippers, he could have readily attributed appellant's question to stupidity rather than any police threat or inducement. The statement informed appellant that the detective was keeping a pair of brown slippers as evidence; yet, a minute-and-a-half later appellant persisted in asking "Where's my brown slippers?" If the trial judge was of the opinion that appellant believed that the detective's statement did not refer to his brown slippers, appellant's question had to have been spontaneous. We hold that the trial judge did not err in admitting appellant's question.

### THE IDENTIFICATION INSTRUCTION

Appellant's counsel focused on the issue of identification during his opening statement.[6] He vigorously cross-examined numerous prosecution witnesses on the same issue. Unfortunately, the record fails to reveal what was said during closing arguments.

---

[6] He argued that:
    In this case, ladies and gentlemen, a tragic mistake has been made, a tragic mistake of mistaken identification. Now, [the prosecutrix] was raped and we're not contesting that one bit. But she has mistaken this young man for the person who actually raped her, and that is our defense in this case.

Appellant's counsel asked the trial judge to give Defendant's Requested Instruction No. 1.[7] The judge re-

---

[7] DEFENDANT'S REQUESTED INSTRUCTION NO. 1

One of the most important issues in this case is the identification of the defendant as the perpetrator of the crime. The Government has the burden of proving identity beyond a reasonable doubt. It is not essential that the witness himself be free from doubt as to the correctness of his statement. However, you, the jury, must be satisfied beyond a reasonable doubt of the accuracy of the identification of the defendant before you may convict him. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant not guilty.

Identification testimony is an expression of belief or impression by the witness. Its value depends on the opportunity the witness had to observe the offender at the time of the offense and to make a reliable identification later.

In appraising the identification testimony of a witness, you should consider the following:

(1) Are you convinced that the witness had the capacity and an adequate opportunity to observe the offender?

Whether the witness had an adequate opportunity to observe the offender at the time of the offense will be affected by such matters as how long or short a time was available, how far or close the witness was, how good were lighting conditions, whether the witness had had occasion to see or know the person in the past.

(2) Are you satisfied that the identification made by the witness subsequent to the offense was the product of his own recollection? You may take into account both the strength of the identification, and the circumstances under which the identification was made.

If the identification by the witness may have been influenced by the circumstances under which the defendant was presented to him for identification, you should scrutinize the identification with great care. You may also consider the length of time that lapsed between the occurrence of the crime and the next opportunity of the witness to see defendant, as a factor bearing on the reliability of the identification.

You may also take into account that as identification made by picking the defendant out of a group of similar individuals is generally more reliable than one which results from the presentation of the defendant alone to the witness.

(3) Finally, you must consider the credibility of each identification witness in the same way as any other witness, consider whether he is truthful, and consider whether he had the capacity and opportunity to make a reliable observation on the matter covered in his testimony.

I again emphasize that the burden of proof on the prosecutor extends to every element of the crime charged, and this specifically includes the burden of proving beyond a reasonable doubt the identity of the defendant as the perpetrator of the crime with which he stands charged. If after examining the testimony, you have a reasonable doubt as to the accuracy of the identification, you must find the defendant not guilty.

fused to give this instruction and gave another[8] over appellant's objection.

Appellant argues that he had a due process right to have his requested instruction on identification given; therefore the trial judge erred in refusing to give it. We have concluded that the giving of special instructions on identification is within the discretion of the trial judge. *See State v. Padilla*, 57 Haw. 144, 552 P.2d 357 (1976).

The defense counsel's opening statement to the jury, his cross-examination of the prosecution witnesses and the general instruction given by the trial judge adequately directed the jury's attention to the identification evidence and made defendant's requested instruction unnecessary. *See id.* We hold that the trial judge did not abuse his discretion in refusing to give defendant's requested instruction.

Affirmed.

*Wayne D. Parsons*, Deputy Public Defender *(William J. Jenner*, Deputy Public Defender, on the briefs) for Defendant-Appellant.

*James B. Takayesu*, Deputy Prosecuting Attorney *(Herbert T. Woolley*, Deputy Prosecuting Attorney, on the brief) for Plaintiff-Appellee.

---

[8] The trial judge instructed the jury as follows:

Identity of the defendant as the person who committed the crime must be proved beyond a reasonable doubt. Such identity may be proved by circumstantial evidence.