STATE OF HAWAII, Plaintiff-Appellant, *v.* EDWARD W. PAAHANA, JR., Defendant-Appellee

NO. 8654

(CRIMINAL NO. 56584)

JULY 21, 1983

LUM, C.J., NAKAMURA, PADGETT, HAYASHI, JJ., AND CIRCUIT JUDGE GREIG, ASSIGNED BY REASON OF VACANCY

OPINION OF THE COURT BY LUM, C.J.

The State appeals from the trial court's order which granted defendant-appellee's motions to suppress incriminating statements made by defendant and a handgun seized by police officers without a warrant. For the reasons set forth below, we reverse the trial court's order with regard to the suppression of defendant's statements and affirm the order with regard to the suppression of the gun.

I.

On September 7, 1981, Nicholas Slate called the police to report that defendant Edward Paahana had threatened him with a gun partially covered by a blue cloth. Three policemen, Officers Earl White, Carlton Young, and Gregory Lefcourt, responded to Slate's call and arrived at the scene to investigate the terroristic threatening complaint. Slate, who knew defendant, directed the police to defendant's house.

As they approached the house, the officers saw defendant emerge from a separate, enclosed laundry room built underneath the main one-story structure. The officers also noticed

several marijuana plants growing along the walkway and around the stairs of the residence.

Officer White informed defendant that they were investigating the terroristic threatening complaint made by Slate. Officer Young asked defendant if he was Edward Paahana and defendant responded that he was. Young then asked defendant if he was aware that growing marijuana was illegal. At about the same time, Young began uprooting the marijuana plants. At this point, defendant exclaimed, "Don't take my plants! It took me three months to grow them. I was just growing them for my brother. . . . You want me to go on welfare? I need the money. . . . All my hard work for nothing." Young did not ask further questions and continued pulling out the plants.

There is some confusion in the record as to what happened next. According to Officer White's police report, defendant "was nervous and he appeared trying to change the subject and move away from the door of the area below the house." At the suppression hearing, however, White testified that defendant had "stepped back into the washroom." In any event, White immediately escorted defendant away from the laundry room area and frisked defendant for weapons. White did not find any weapons on defendant's person.

While Officer Lefcourt guarded defendant several feet away from the laundry room door, near the stairs leading to the house, Officer White entered the laundry room to continue his search for weapons. White spotted a pair of protruding handgun grips partially hidden by a blue cloth on a table in the corner of the room, approximately six to eight feet from the doorway. Upon lifting the cloth, White discovered a .44 magnum pistol.

While Officer White was investigating the laundry room, Officer Young placed defendant under arrest for promotion of a detrimental drug. When White emerged from the laundry room with the gun he had seized, he arrested defendant on the additional charge of terroristic threatening.

The trial court subsequently granted defendant's motion to suppress his statements regarding the marijuana plants because of the officers' failure to inform defendant of his Miranda rights prior to questioning him about the marijuana. In the same order, the court also granted defendant's motion to

suppress the use of the pistol as evidence on the grounds that there were no exigent circumstances which would justify its warrantless seizure. The State appeals from the order of suppression.

## II.

The first issue raised by the State's appeal is whether Officer Young's question about the marijuana plants constituted custodial interrogation requiring prior recitation of Miranda warnings.

It is by now a fundamental tenet of criminal law that "the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination."[1] *Miranda v. Arizona,* 384 U.S. 436, 444 (1966). *Accord, State v. Melemai,* 64 Haw. 479, 643 P.2d 541 (1982); *State v. Amorin,* 61 Haw. 356, 604 P.2d 45 (1979). Conversely, if defendant's statements were made independently of any custodial interrogation, prior Miranda warnings need not be given and defendant's statements are admissible at trial. *See State v. Sugimoto,* 62 Haw. 259, 614 P.2d 386 (1980); *State v. Patterson,* 59 Haw. 357, 581 P.2d 752 (1978); *State v. Pahio,* 58 Haw. 323, 568 P.2d 1200 (1977).

To be considered custodial interrogation, an officer's questions or actions must be of such a nature that would "'subjugate the individual to the will of his examiner' and thereby undermine the privilege against compulsory self-incrimination." *Rhode Island v. Innis,* 446 U.S. 291, 299 (1980) (quoting *Miranda v. Arizona,* 384 U.S. at 457-58). In determining whether a defendant's statement was made in a custodial

---

[1] The required procedural safeguards referred to in *Miranda* are, of course, the familiar Miranda warnings advising defendant "of his right to remain silent, that anything he says can and will be used against him, that he has the right to have his attorney present, and that if he cannot afford counsel, one will be appointed for him prior to any interrogation." State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975) (construing Miranda v. Arizona, 384 U.S. at 467-74).

context, the totality of circumstances must be considered, including the time, place and length of the interrogation, the nature of the questions asked, the conduct of the police at the time of the interrogation, and any other pertinent factors. *See State v. Melemai,* 64 Haw. at 481, 643 P.2d at 544; *State v. Sugimoto,* 62 Haw. at 265, 614 P.2d at 391; *State v. Patterson,* 59 Haw. at 361, 581 P.2d at 755. In determining whether an officer's questions constitute interrogation, the test is whether the officer should have known that his words and actions were reasonably likely to elicit an incriminating response from the defendant. *Rhode Island v. Innis,* 446 U.S. at 301.

At the time Officer Young asked defendant if he knew that growing marijuana plants was illegal, the officers' investigation of the terroristic threatening complaint was still in its preliminary stages. Questioning of defendant at that point was still brief and casual and not yet coercive or sustained. *See People v. Manis,* 268 Cal. App. 2d 653, 669, 74 Cal. Rptr. 423, 433 (1969). The officers' questions prior to defendant's statements fell within the category of general on-the-scene questioning which the police may permissibly ask in the exercise of their traditional investigatory functions. *See State v. Melemai,* 64 Haw. at 481-82, 643 P.2d at 544; *State v. Patterson,* 59 Haw. at 361-62, 581 P.2d at 755.

Moreover, defendant's statements were not responsive to the question asked, "Don't you know that growing marijuana plants is illegal?", but were instead spontaneously volunteered without compulsion or reasonable provocation. After defendant's outburst, Officer Young did not ask any further questions or press defendant for more information. There was no reason for Young to foresee that his single question or the uprooting of the marijuana plants would release such a flood of incriminating information from defendant and "the police surely cannot be held accountable for the unforeseeable results of their words or actions." *Rhode Island v. Innis,* 446 U.S. at 301-02.

The officers' questions and actions prior to defendant's statements were not the kind of coercive conduct which would undermine defendant's privilege against self-incrimination. We therefore conclude that defendant's statements were not a product of custodial interrogation and consequently, prior

Miranda warnings were not required for their admission into evidence. The portion of the trial court's suppression order which granted defendant's motion to suppress all statements made by defendant at the time of his arrest is accordingly reversed.

## III.

The remaining issue raised by the State's appeal is whether circumstances justified the warrantless seizure of the gun by Officer White from defendant's laundry room.

The laundry room where the gun was seized was part of defendant's residence, a place in which defendant had a legitimate expectation of privacy protected by the fourth amendment's proscription against unreasonable searches and seizures.[2] *See State v. Dias,* 62 Haw. 52, 55, 609 P.2d 637, 639 (1980). A warrantless search of a premises in which a defendant has a legitimate expectation of privacy is presumptively unreasonable. *Katz v. United States,* 389 U.S. 347, 357 (1967); *State v. Rosborough,* 62 Haw. 238, 240-41, 615 P.2d 84, 86 (1980); *State v. Kaluna,* 55 Haw. 361, 363, 520 P.2d 51, 55 (1974). The State has the burden of overcoming this initial presumption of unreasonableness by proving that the search falls within one of the well-recognized and narrowly-defined exceptions to the general warrant requirements of the fourth amendment. *Chimel v. California,* 395 U.S. 752, 762 (1969); *State v. Groves,* 65 Haw. 104, 108, 649 P.2d 366, 369 (1982); *State v. Rosborough,* 62 Haw. at 241, 615 P.2d at 86.

---

[2] This legitimate expectation of privacy stems from the express language of the fourth amendment of the United States Constitution ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized") as well as article I, § 7 of the Hawaii Constitution ("The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches, seizures and invasions of privacy shall not be violated; and no warrants shall issue but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized or the communications sought to be intercepted").

The State contends on appeal that Officer White's warrantless search of the laundry room fell within the exception known as "a search incident to a lawful arrest." As we have noted before, a contemporaneous search incident to a lawful arrest may be "directed towards a protective search for weapons, or towards the discovery of the fruits of the crime for which the accused has been arrested, as well as the instrumentalities used in its commission, or to deprive the arrestee of potential means of escape." *State v. Barnes,* 58 Haw. 333, 338, 568 P.2d 1207, 1211 (1977). *See also State v. Groves,* 65 Haw. at 108, 649 P.2d at 369-70; *State v. Melear,* 63 Haw. 488, 494, 630 P.2d 619, 624-25 (1981); *State v. Jenkins,* 62 Haw. 660, 665, 619 P.2d 108, 112 (1980).

The scope of a permissible search incident to a valid arrest, however, is limited to a search of the arrestee's person and the area within his immediate control from which he could obtain a weapon or destroy evidence. *Chimel v. California,* 395 U.S. at 763; *State v. Melear,* 63 Haw. at 494, 630 P.2d at 625; *State v. Dias,* 52 Haw. 100, 108, 470 P.2d 510, 515 (1970). If law enforcement officials exceed the scope of what is considered absolutely necessary to accomplish the purposes for which such searches are permitted, the warrantless search can no longer be justified as a permissible search incident to a valid arrest. *State v. Melear,* 63 Haw. at 494, 630 P.2d at 625; *State v. Barnes,* 58 Haw. at 338, 568 P.2d at 1211; *State v. Kaluna,* 55 Haw. at 363, 520 P.2d at 55.

The scope of the search conducted by Officer White exceeded the area within the defendant's immediate control from which the defendant could have obtained the gun to either endanger the officers' safety or prevent its discovery as evidence. The gun was located in a separate, enclosed room on a table several feet away from the doorway and apparently several additional feet away from the defendant, who was standing on or near the stairs leading to the main house. Defendant was closely guarded by Officer Lefcourt, with Officer Young nearby to lend assistance if needed. Once Officer White had frisked defendant and removed him from access to the laundry room area, there was no longer any need to continue his search for weapons in an area outside of defendant's control.

Having gone beyond the scope of what was absolutely necessary to accomplish the purpose of insuring his safety and the safety of his fellow officers and preventing the destruction of possible evidence, Officer White's search of the laundry room cannot be justified under the exception for contemporaneous searches incident to a valid arrest. Neither can the search be justified as a search motivated by "exigent circumstances," as claimed by the State in the suppression hearing.

In *State v. Clark,* 65 Haw. 488, 654 P.2d 355 (1982), we noted that the exception for searches incident to a lawful arrest was closely related to the more general exception for searches motivated by exigent circumstances. In essence, the exception for searches incident to a lawful arrest "implies the exigent circumstances of imminent danger to the arresting officer or others and of imminent concealment or destruction of evidence or the fruits of the crime from the circumstances of a lawful arrest." *Id.* at 496, 654 P.2d at 361. The exigent circumstances exception exists whenever the demands of the occasion reasonably call for an immediate police response, such as when an immediate search of an area is required to prevent imminent danger to life or serious injury or to forestall the immediate threatened removal or destruction of evidence. *State v. Dorson,* 62 Haw. 377, 384, 615 P.2d 740, 746 (1980); *State v. Dias;* 62 Haw. at 56, 609 P.2d at 640 (1980); *State v. Lloyd,* 61 Haw. 505, 512, 606 P.2d 913, 918 (1980). In order for the State to take advantage of this particular exception, the State must be able to point to specific and articulable facts from which it may be determined that the officers' actions were necessitated by the exigencies of the situation which called for an immediate police response. *State v. Clark,* 65 Haw. at 494, 654 P.2d at 360; *State v. Dias,* 62 Haw. at 57, 609 P.2d at 640.

The State in this case is unable to point to any articulable reasons which would support the immediate search of the laundry room without prior issuance of a warrant. The mere fact that the police suspected that a gun had been used in the terroristic threatening incident, without more, did not create any exigent circumstances which would justify an indiscriminate warrantless search of the premises for weapons. The police had no reason to believe that defendant had an accomplice who may have had access to the gun or that an immediate

search was necessary to prevent defendant from escaping or resisting arrest. The State has made no showing that it would have been impracticable for the police to obtain a warrant or that the delay incident in obtaining prior judicial approval for the search would have endangered the police or resulted in the destruction of evidence. *See State v. Dias,* 62 Haw. at 57-58, 609 P.2d at 641.

Since the State has been unable to prove that the warrantless search of the laundry room fell within any of the exceptions to the warrant requirement claimed, we conclude that the seizure of the gun by Officer White was not justified. The portion of the trial court's order suppressing the use of the gun as evidence is affirmed.

Affirmed in part, reversed in part, and remanded for further proceedings consistent herewith.

*Arthur E. Ross* (*Nancy T. Sugimura* and *Ann H. Otani* on the briefs), Deputy Prosecuting Attorneys, for plaintiff-appellant.

*J. Michael Dwyer* (*Michael A. Weight* on the brief) for defendant-appellee.

## CONCURRING AND DISSENTING OPINION OF NAKAMURA, J.

I concur in the court's affirmance of the trial court's order excluding the handgun as evidence but dissent from the reversal of the order suppressing the defendant's statements. For I find, as the trial court did, that the defendant's incriminatory remarks were designedly educed by the police in an inherently coercive setting without proper procedural safeguards.

I.

The precepts governing custodial interrogation are clearly delineated in the court's opinion, and *Rhode Island v. Innis,* 446 U.S. 291 (1980), and *State v. Melemai,* 64 Haw. 479, 643 P.2d 541 (1982), undoubtedly represent the state of the law in the area of present concern. My reluctance to join in the opinion stems not from its statement of the controlling legal principles but from the reading given the factual record made

below.

## A.

In *Miranda v. Arizona,* 384 U.S. 436 (1966), the Supreme Court ruled "that in the context of 'custodial interrogation' certain procedural safeguards are necessary to protect a defendant's Fifth and Fourteenth Amendment privilege against compulsory self-incrimination." *Rhode Island v. Innis,* 446 U.S. at 297. *Miranda* "rights," as this court's opinion emphasizes, accrue when police custody and police interrogation coalesce. "It is this *combination* of 'custody' and 'interrogation' that creates—and, in the absence of 'adequate protective devices,' enables the police to exploit—an *'interrogation* environment' designed to 'subjugate the individual to the will of his examiner.'" Kamisar, *Brewer v. Williams, Massiah, and Miranda: What is "Interrogation"? When Does it Matter?,* 67 Geo. L.J. 1, 63 (1978) (emphasis in original) (footnotes omitted). The court, however, finds neither custody nor interrogation was implicated here.

To be sure, the defendant was not being held at the police station—he was at his residence. Still, "custody" under *Miranda* encompasses the deprivation of a person's "freedom of action in any significant way." *Miranda v. Arizona,* 384 U.S. at 444. *See State v. Melemai,* 64 Haw. at 481-82, 643 P.2d at 543-44. When three officers converged on the defendant at his residence to investigate a complaint that he threatened someone with harm and brandished a firearm in the process, made the purpose of their presence known, inquired whether he was the object of the investigation, and he acknowledged he was, the defendant could not have realistically assumed he was still "free to go." Though he may not have been arrested, he definitely had been "deprived of his freedom of action in . . . [a] significant way." *Miranda v. Arizona,* 384 U.S. at 444.

Like "custody," "interrogation" for purposes of the *Miranda* rule is not subject to narrow application. It "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the sus-

pect." *Rhode Island v. Innis,* 446 U.S. at 301 (footnotes omitted). And "[t]he latter portion of this definition focuses primarily upon the perceptions of the suspect, rather than the intent of the police." *Id.*

Here, the defendant's outburst followed on the heels of an officer's pointed reference to illegal conduct with respect to the plants abounding in the yard and his act of uprooting them. But for the words and action, I daresay there would have been no outpouring of incriminating statements. Furthermore, the defendant's emotional response to the situation manipulated by the officer could not have been a totally unexpected reaction. In my view this all occurred "in the context of 'custodial interrogation' [where] certain procedural safeguards are necessary." *Rhode Island v. Innis,* 446 U.S. at 297.

### B.

Yet the court concludes the situation did not necessarily evoke *Miranda* protections for the defendant, as it finds "[t]he officers' questions prior to the defendant's statements fell within the category of general on-the-scene questioning." The evidence in the record, I would say, establishes the investigation of the promotion of dangerous drug offense had advanced beyond its preliminary stages and the time for general inquiries by then.

The critical remark and action followed the defendant's acknowledgment that he was Edward Paahana. Initially, the police officer had been provided with specific information of a terroristic threat and the name and residence of its perpetrator by the alleged victim. When the officer was guided by the victim to the residence of the alleged felon he observed marijuana plants growing in the yard. And when the policeman subsequently learned he was actually speaking to Edward Paahana, the investigation of the drug offense, as well as that of the reported crime, focused directly on the defendant. Any questions put to him thereafter could hardly be deemed general on-the-scene questioning. *State v. Melemai,* 64 Haw. at 482, 643 P.2d at 544. *Miranda* warnings were then in order; and in their absence the defendant's statements should be excluded as evidence at trial. *Id.*