FOR PUBLICATION IN WEST'S HAWAIʻI REPORTS AND PACIFIC REPORTER

Electronically Filed
Intermediate Court of Appeals
CAAP-15-0000682
26-JAN-2018
11:24 AM

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

---o0o---

STATE OF HAWAIʻI, Plaintiff-Appellee,
vs.
MARCIA D. WILSON, Defendant-Appellant.

NO. CAAP-15-0000682

APPEAL FROM THE DISTRICT COURT OF THE SECOND CIRCUIT
(CASE NO. 2DTA-14-00949)

JANUARY 26, 2018

NAKAMURA, C.J., and FUJISE and CHAN, JJ.

OPINION OF THE COURT BY NAKAMURA, C.J.

Plaintiff-Appellee State of Hawaiʻi (State) charged
Defendant-Appellant Marcia D. Wilson (Wilson) with: (1) Operating
a Vehicle Under the Influence of an Intoxicant (OVUII), in
violation of Hawaii Revised Statutes (HRS) §§ 291E-61(a)(1)
(2007) and 291E-61(b) (Supp. 2014);[1] and (2) Refusal to Submit to

---

[1] HRS § 291E-61(a)(1) provides:

(a) A person commits the offense of operating a vehicle
(continued...)

a Breath, Blood, or Urine Test (Refusal to Submit to Testing), in violation of HRS § 291E-68 (Supp. 2014).[2] After a bench trial, Wilson was found guilty as charged.

Wilson's conviction for Refusal to Submit to Testing was based on her refusal to submit to a breath or blood test to determine alcohol concentration after being arrested for OVUII. This appeal presents the question of whether Wilson could be prosecuted for Refusal to Submit to Testing in light of the Hawai'i Supreme Court's decision in State v. Won, 137 Hawai'i 330, 372 P.3d 1065 (2015). In Won, the supreme court overturned Won's OVUII conviction, which was based on a breath test that showed his breath alcohol concentration exceeded the legal limit, holding that Won's consent to the breath test was coerced by the criminal sanctions that could be imposed if he refused to consent. Won, 137 Hawai'i at 348-49, 372 P.3d at 1083-84. As explained below, based on the supreme court's analysis in Won, we conclude that Wilson could not be prosecuted for Refusal to Submit to Testing. We therefore reverse that conviction.

Wilson also challenges her OVUII conviction. Wilson contends that her OVUII conviction should be vacated because the trial court erred in accepting her stipulation that the arresting officer was qualified to administer field sobriety tests. Wilson

---

[1] (...continued)
under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

> (1)   While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

HRS § 291E-61(b) establishes the penalties for committing the offense of OVUII and provides for enhanced penalties for repeat OVUII offenders.

[2] At the time relevant to this case, HRS § 291E-68 provided, in relevant part: "[R]efusal to submit to a breath, blood, or urine test as required by part II is a petty misdemeanor." HRS § 291E-68 was subsequently repealed effective April 26, 2016, which was after the date of the charged offense in this case. 2016 Haw. Sess. Laws Act 17, § 2 at 21.

2

contends that her stipulation was invalid because the trial court failed to engage in a colloquy with her to ensure that she personally approved of the stipulation. We conclude that Wilson's colloquy argument is without merit and affirm her OVUII conviction.

BACKGROUND

Wilson was driving a white Volkswagon convertible when Maui Police Department (MPD) Officer Jun Hattori signaled for her to pull over. Wilson's car moved to the shoulder of the road, then climbed the curb and came to a stop with both passenger tires on the curb. In speaking with Wilson, Officer Hattori observed that her eyes were red, her speech was slurred and mumbled, and there was an odor of liquor coming from her person and her car. Officer Hattori asked Wilson if she would be willing to participate in field sobriety tests, and Wilson agreed to participate. Wilson performed poorly on the tests, and she was arrested for OVUII.

At the police station, Officer Hattori, using a standard MPD "implied consent" form (MPD Form 332), advised Wilson that pursuant to HRS Chapter 291E:

1. Any person who operates a vehicle upon a public way, street, road or highway . . . shall be deemed to have given consent to a test or tests for the purpose of determining alcohol concentration . . . of the person's breath [or] blood . . . ."

2. You may refuse to submit to a breath or blood test, or both, for the purpose of determining alcohol concentration . . . ."

Wilson told Officer Hattori that she was "not taking any tests[,]" and she signed the MPD Form 332 after checking the box signifying that she "refuse[d] to take a breath and/or blood test" for alcohol concentration.

Officer Hattori then used the standard MPD "refusal to take test(s)" form (MPD Form 332a), to advise Wilson, among other things, of the administrative and criminal sanctions she may be

subject to if she persisted in refusing to submit to testing. With respect to criminal sanctions, Wilson was informed that:

> If you refuse to submit to a breath [or] blood . . . test, as requested, you may be subject to up to thirty days imprisonment and/or a fine of up to $1,000, and/or the sanctions of HRS 291E-65, if applicable.

Although Wilson initially indicated she would take a breath test using a breathalyzer machine, she changed her mind and refused to submit to testing. Wilson checked and initialed the box on the MPD Form 332a that signified that she refused to take a breath or blood test for alcohol concentration, and she signed the form. At trial, the State introduced both MPD Form 332 and MPD Form 332a.

After considering the evidence presented, the District Court of the Second Circuit (District Court)[3] found Wilson guilty as charged of OVUII and Refusal to Submit to Testing. The District Court entered its Judgment on August 27, 2015, and this appeal followed.

## DISCUSSION

### I.

The Hawai'i Supreme Court's decision in Won was issued after the trial in this case. Wilson argues that in light of Won, evidence of her refusal to submit to testing was obtained in violation of her right to be free from unreasonable searches, and the District Court erred in admitting such evidence. She thus argues that her conviction for Refusal to Submit to Testing must be reversed.[4]

---

[3] The Honorable Kelsey T. Kawano presided.

[4] We note that the State concedes error on this point of error. However, we are obligated to resolve the case on the merits, notwithstanding the State's concession of error. See State v. Hoang, 93 Hawai'i 333, 336, 3 P.3d 499, 502 (2000). Moreover, even if we had the option of basing our decision solely on the State's concession of error, see State v. Tokunaga, CAAP-16-0000875, 2017 WL 6033023, at *2 (Hawai'i App. Dec. 6, 2007) (Nakamura, C.J., concurring), we would exercise our discretion to address the issue on the merits.

As explained below, we conclude that the supreme court's analysis in <u>Won</u> requires the reversal of Wilson's Refusal to Submit to Testing conviction. To understand the application of <u>Won</u> to this case and the development of the law, it is helpful to review the history of legislative enactments and judicial decisions in this area.

A.

In 1967, the Hawaiʻi Legislature enacted an implied consent statute to reduce deaths, injuries, and damages arising out of highway traffic accidents. <u>See</u> 1967 Haw. Sess. Laws Act 214, at § 1. While the statutory scheme has evolved over time, its underlying premise has remained the same, that a person who operates a motor vehicle on the State's public roads "shall be deemed" to have given consent to testing for evidence of impairment. <u>See</u> HRS § 286-151 (1968); HRS § 291E-11(a) (2007). The original statute authorized testing of a driver's breath or blood to determine the alcoholic content of the driver's blood. HRS § 286-151 (1986). Subsequent amendments to the statutory scheme expanded the scope of testing to breath, blood, or urine to determine the alcohol concentration or drug content of the driver's breath, blood, or urine, as applicable. HRS § 291E-11(a) (2007). A driver whose alcohol concentration in breath or blood exceeds the legal limit is subject to criminal liability for OVUII without the State having to prove at trial that the driver was actually impaired. <u>See</u> HRS § 291E-61(a)(3) (2007).[5]

---

[5] HRS § 291E-61(a)(3) provides:

(a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:

. . .

(3)  With .08 or more grams of alcohol per two hundred ten liters of breath[.]

5

Prior to 2011, a person who refused to submit to testing, as required by the implied consent statutory scheme, was subject only to civil administrative sanctions, including the revocation of his or her driver's license and referral for substance abuse assessment and treatment. See HRS §§ 291E-41, 291E-65 (2007). However, effective January 1, 2011, the Legislature enacted HRS § 291E-68, which imposed criminal sanctions for the refusal to submit to a breath, blood, or urine test. 2010 Haw. Sess. Laws Act 166, §§ 2, 26, at 398, 415. The version of HRS § 291E-68 applicable to Wilson's case stated: "Except as provided in section 291E-65, refusal to submit to a breath, blood, or urine test as required by part II is a petty misdemeanor."[6]

B.

In Won, the supreme court considered the impact that the criminal sanctions under HRS § 291E-68 for refusal to submit to testing had on the validity of a defendant's consent to submit to a breath test under the statutory scheme. Won was arrested for OVUII. Won, 137 Hawai'i at 334, 372 P.3d at 1069. At the police station, an officer read an "implied consent" form to Won. Id. The form advised Won that he could refuse to submit to a breath or blood test to determine his alcohol concentration, but that if he refused, he "shall be subject to up to thirty days imprisonment and/or fine up to $1,000 or the sanctions of 291E-65, if applicable." Id. at 335, 372 P.3d at 1070. Won indicated his agreement to take a breath test by initialing the form next to the statement "AGREED TO TAKE A BREATH TEST AND

_____

[6] HRS § 291E-65 (Supp. 2014) pertains to sanctions for persons under the age of twenty-one who are arrested for operating a vehicle after consuming a measurable amount of alcohol and who refuse to submit to testing. HRS § 291E-65 did not apply to Wilson who was over twenty-one at the time of her arrest. Part II of HRS Chapter 291E establishes the requirements and procedures for implied consent testing.

REFUSED THE BLOOD TEST," and he signed the form. Id. Won took a breath test, and the test results showed that he had a breath alcohol content of 0.17 grams of alcohol per two hundred ten liters of breath, far above the legal limit of 0.08. Id. Won was charged with and convicted of OVUII, in violation of HRS §§ 291E-61(a)(3) and (b)(1), as a first offense. Id.

The supreme court addressed the question of whether Won's consent to the breath test was valid where he was informed by the police of his right to refuse consent, but was also told that if he exercised that right, his refusal to consent would be a crime for which he could be imprisoned for up to thirty days. Id. at 333, 372 P.3d at 1068. The supreme court reasoned that a breath test was a search subject to constitutional constraints, including the warrant requirement generally applicable to searches. Id. at 338-39, 372 P.3d at 1073-74. The court recognized, however, that the warrant requirement was subject to exceptions. Id. at 339, 372 P.3d at 1074. After concluding that certain established exceptions to the warrant requirement, such as exigent circumstances and search incident to arrest, did not apply in Won's case, the court focused its attention on the consent exception to the warrant requirement. Id. at 339-40, 339 n.23, 372 P.3d at 1074-75, 1075 n.23.

The court held that because Won had been informed that his refusal to submit to testing would subject him to criminal penalties, Won's consent to the breath test had been coerced by the threat of criminal sanctions and was therefore invalid. Id. at 348-49, 372 P.3d 1083-84. In this regard, the court concluded that if Won had only been advised that his refusal to submit to testing would subject him to statutory civil administrative penalties, Won's consent would have been valid. Id. at 349 n.34,

7

372 P.3d at 1084 n.34.[1]  Thus, in the court's analysis, it was the threat of being subjected to criminal sanctions imposed by HRS § 291E-68, which the police communicated to Won in obtaining his consent to the breath test, that rendered his consent invalid.  The court concluded that because Won's consent was invalid, and no other exception to the warrant requirement was applicable, Won's breath test constituted an unconstitutional warrantless search; therefore, Won's breath test results were subject to suppression and inadmissible as evidence.  Id. at 355, 372 P.3d at 1090.

C.

Unlike Won, Wilson did not consent to a breath test, but rather refused to submit to testing.  Thus, this case is

---

[1] The court stated:

> It bears repeating here that this opinion does not concern the civil administrative penalties attendant to a driver's refusal of [alcohol concentration] testing.  See HRS § 291E-41(d) (Supp. 2010); see generally HRS Chapter 291E, Part III.  Those types of sanctions are not affected in any way by our decision.  Because we conclude only that the threat of being subjected to criminal sanctions inherently coerces a suspected OVUII offender into giving consent, if a police officer does not inform the offender of the criminal sanctions because they were omitted from the notice given by the officer, see HRS § 291E-15 ([Supp. 2010]); supra note 28, then proving OVUII through evidence of a defendant's [breath or] blood alcohol content, see HRS § 291E-61(a)(3)-(4), will remain a viable option for purposes of prosecution.

Won, 137 Hawai'i at 349 n.34, 372 P.3d at 1084 n.34.  The court read HRS § 291E-15 as giving the police the option of only advising an arrested driver of the civil administrative sanctions under HRS § 291E-41, and not the criminal penalties under HRS § 291E-68.  Id. at 345 n.28, 372 P.3d at 1080 n.28.  The court noted that "the legislative history of HRS § 291E-15 indicates that police are obliged to inform an arrestee only of the sanctions that may be sought to be imposed."  Id.  In other words, the police could obtain a valid consent to testing from an arrested driver by omitting the warning that refusal to consent would subject the driver to criminal penalties.  This omission, however, would also preclude the State from prosecuting an arrested driver for Refusal to Submit to Testing because as a prerequisite for such prosecution, the statutory scheme required the police to advise the driver of the criminal sanctions under HRS § 291E-68, and then ask the driver if he or she still refused to submit to testing.  HRS § 291E-15 (Supp. 2010).

factually distinguishable from Won. However, we conclude that the analysis used by the majority in Won to arrive at its determination that Won's consent was invalid controls our decision in this case.

In particular, the Won majority observed that in the absence of a warrant or an exception (besides consent) to the warrant requirement, the choice presented to Won by the implied consent form, which required him to surrender either his constitutional right to refuse to be searched or his constitutional right to not be arrested for constitutionally authorized conduct, rendered his consent to search involuntary. The majority opined:

> In situations in which police have not obtained a warrant and no other exception to the warrant requirement is present, the choice presented by the [i]mplied [c]onsent [f]orm forces a defendant to elect between fundamental rights guaranteed by the Hawai'i Constitution. On the one hand, the person may exercise the constitutional right to refuse to be searched, thus relinquishing the constitutional right to not be arrested for conduct that is authorized by the constitution.

> Alternatively, the person may "choose" to be searched in order to prevent being arrested for the refusal crime, thus forfeiting the constitutional right to not be subject to a search absent a warrant or an exception to the warrant requirement.

> That is, with respect to both alternatives, a person must surrender one constitutional right for preservation of another. However, the government may not condition a right guaranteed in our constitution on the waiver of an equivalent constitutional protection. "It is intolerable that one constitutional right should have to be surrendered in order to assert another."

> It is manifestly coercive to present a person with a "choice" that requires surrender of the constitutional right to refuse a search in order to preserve the right to not be arrested for conduct in compliance with the constitution. It is equally coercive to "allow" the person to preserve the fundamental right to refuse a search by requiring the person to relinquish the right to not be arrested for conduct that does not violate the constitution.

Id. at 347-48; 372 P.3d at 1082-83 (citations, footnote, emphasis, and brackets omitted).

9

Integral to the majority's analysis is that absent a warrant or an exception to the warrant requirement, an arrested driver has a constitutional right to refuse to consent to be searched, i.e. submit to a breath test. Therefore, where the police lack a search warrant or an exception to the warrant requirement, imposing criminal penalties on an arrested driver, pursuant to HRS § 291E-68, for refusing to submit to testing would impermissibly impose criminal sanctions on the driver for engaging in conduct that is constitutionally protected. Stated another way, where there is no warrant or exception to the warrant requirement, an arrested driver has a constitutionally protected right to be free from governmental searches, and such driver cannot be subject to criminal penalties for exercising that right by refusing to consent to a breath-test search.

Here, the police did not have a warrant to search Wilson, and based on Won, there was no exception to the warrant requirement that would permit the police to compel Wilson to submit to testing. In accordance with the majority's analysis in Won, the State could not subject Wilson to criminal punishment for exercising her constitutional right to refuse to submit to testing.

D.

In the aftermath of the supreme court's decision in Won, the Legislature repealed HRS § 291E-68 effective April 26, 2016. 2016 Haw. Sess. Laws Act 17, § 2 at 21. Accordingly, under the current statutory scheme, refusal to submit to testing is no longer a crime subject to criminal penalties. Instead, an arrested driver's refusal to submit to testing only subjects the driver to civil administrative penalties. As the supreme court concluded in Won, advising an arrested driver that his or her refusal to consent to testing would result in the imposition of civil administrative penalties would not invalidate the driver's

10

subsequent consent to testing.  <u>Won</u>, 137 Hawaiʻi at 349 n.34, 372 P.3d at 1084 n.34.

### E.

After the Hawaiʻi Supreme Court's decision in <u>Won</u> and the Legislature's repeal of HRS § 291E-68, the United States Supreme Court considered three consolidated cases involving implied consent statutes which, like Hawaiʻi's statutory scheme in effect at the time of <u>Won</u> and this case, imposed criminal penalties on an arrested driver who refused to consent to testing.  <u>Birchfield v. North Dakota</u>, 136 S.Ct. 2160 (2016).  The three consolidated cases involved: (1) a driver prosecuted for refusing to submit to a breath test; (1) a driver prosecuted for refusing to submit to a blood test; and (3) a driver who consented to a blood test after being warned of criminal sanctions for test refusal and whose license was administratively suspended based on the blood test results.  <u>Id.</u> at 2170-72.

The Supreme Court began its analysis by noting that the decision in the three cases turned on whether a warrantless search for breath or blood comports with the Fourth Amendment under the circumstances presented:

> [S]uccess for all three [driver-]petitioners depends on the proposition that the criminal law ordinarily may not compel a motorist to submit to the taking of a blood sample or to a breath test unless a warrant authorizing such testing is issued by a magistrate.  <u>If, on the other hand, such warrantless searches comport with the Fourth Amendment, it follows that a State may criminalize the refusal to comply with a demand to submit to the required testing, just as a State may make it a crime for a person to obstruct the execution of a valid search warrant</u>.  <u>See</u>, <u>e.g.</u>, Conn. Gen. Stat. § 54-33d (2009); Fla. Stat. § 933.15 (2015); N.J. Stat. Ann. § 33:1-63 (West 1994); 18 U.S.C. § 1501; <u>cf.</u> <u>Bumper v. North Carolina</u>, 391 U.S. 543, 550, 88 S.Ct. 1788, 20 L.Ed.2d 797 (1968) ("When a law enforcement officer claims authority to search a home under a warrant, he announces in effect that the occupant has no right to resist the search").  And by the same token, if such warrantless searches are constitutional, there is no obstacle under federal law to the admission of the results that they yield in either a criminal prosecution or a civil or administrative proceeding.  We therefore begin by

11

> considering whether the searches demanded in these cases
> were consistent with the Fourth Amendment.

Id. at 2171-73 (emphasis added).

The Supreme Court distinguished between warrantless breath tests and warrantless blood tests. The Court held that a warrantless breath test constituted a valid search incident to arrest for drunk driving and thus was permissible under the Fourth Amendment. Id. at 2184. In support of this holding, the Court concluded that the "impact of breath tests on privacy is slight,"[8] and the need for blood alcohol concentration (BAC) testing through breath tests is great.[9] Id. The Court, however, came to a different conclusion with respect to blood tests, holding that a warrant was required for a blood test and that a blood test could not be administered under the "search incident to arrest" exception to the warrant requirement. Id. In support of this holding, the Court noted that blood tests are significantly more intrusive than breath tests, and that "the availability of the less invasive alternative" of breath tests to measure BAC diminished the need for warrantless blood tests. Id.

---

[8] The Court concluded that "breath tests do not implicate significant privacy concerns" because: (1) the required physical intrusion "is almost negligible"; (2) the information revealed by breath tests is limited to the amount of alcohol in the subject's breath; and (3) participation in a breath test is not likely to cause any great enhancement in the embarrassment inherent in any arrest. Id. at 2176-77 (internal quotation marks, citation, and brackets omitted).

[9] The Court observed that "[a]lcohol consumption is a leading cause of traffic fatalities and injuries" and noted that its cases have "long recognized the 'carnage' and 'slaughter' caused by drunk drivers." Id. at 1278. The Court also noted the burden on the police and the courts that would be imposed by requiring a search warrant for every breath test: "If a search warrant were required for every search incident to arrest that does not involve exigent circumstances, the courts would be swamped. And even if we arbitrarily singled out BAC tests incident to arrest for this special treatment . . . the impact on the courts would be considerable. The number of arrests every year for driving under the influence is enormous -- more than 1.1 million in 2014." Id. at 2180.

Based on this analysis, the Supreme Court held that Bernard, the driver who refused to submit to a warrantless breath test, could be criminally prosecuted for his refusal. Id. at 2186. The Court reasoned that the warrantless breath test "was a permissible search incident to Bernard's arrest for drunk driving, an arrest whose legality Bernard has not contested. Accordingly, the Fourth Amendment did not require officers to obtain a warrant prior to demanding the test, and Bernard had no right to refuse it." Id. (emphasis omitted).

The Court reversed the conviction of the driver prosecuted for refusing to consent to a blood test. Id. With respect to the driver on whom administrative sanctions were imposed after he consented to a blood test, the Court remanded the case for consideration of whether the driver's consent was voluntary, since the state court's ruling that the consent was voluntary was based on the erroneous assumption that the state could permissibly compel both blood and breath tests. Id.

F.

Under the United States Supreme Court's reasoning and analysis in Birchfield, Wilson could properly be prosecuted for Refusal to Submit to Testing. Under the Birchfield analysis, because a warrantless breath test is permissible as a search incident to arrest, Wilson could have been compelled to submit to a breath test, and she had no right, constitutional or otherwise, to be free from a breath-test search or to refuse to consent to a breath test. Because Wilson had no right to refuse to consent to a breath test, her refusal to submit to a breath test, after being given the option of a breath or blood test, could legitimately have subjected her to criminal penalties.

The question thus becomes whether the United States Supreme Court's decision in Birchfield would cause the Hawai'i Supreme Court to change its analysis in Won. Birchfield was decided based on the Fourth Amendment to the United States

13

Constitution, while Won was based on the Hawai'i Supreme Court's interpretation of Article I, Section 7 of the Hawai'i Constitution. Unlike the United States Supreme Court, the Hawai'i Supreme Court concluded that the "search incident to arrest" exception to the warrant requirement did not apply to Won's breath test. The Hawai'i Supreme Court stated:

> The search incident to arrest exception is also inapplicable as it is "limited in scope to a search of the arrestee's person and the area within his immediate control from which he could obtain a weapon or destroy evidence." State v. Paahana, 66 Haw. 499, 506, 666 P.2d 592, 597 (1983) (internal quotation mark omitted). "The exception for searches incident to a lawful arrest 'implies the exigent circumstances of imminent danger to the arresting officer or others and of imminent concealment or destruction of evidence or the fruits of the crime from the circumstances of a lawful arrest.'" Id. (quoting State v. Clark, 65 Haw. 488, 496, 654 P.2d 355, 361 (1982)). As noted, McNeely held that the natural metabolization of alcohol does not qualify as a per se exigency, and the record indicates no other exigency that necessitated the breath test.

Won, 137 Hawai'i at 339 n.23, 372 P.3d at 1074 n.23 (brackets omitted).

If the Hawai'i Supreme Court adopted the Birchfield analysis in interpreting Article I, Section 7 of the Hawai'i Constitution, it would require overturning Won because Won was premised on the assumption that the State could not lawfully compel Won to submit to a breath test. If the police were authorized to administer a breath test to Won as a valid search incident to arrest, imposing criminal penalties on Won's refusal to submit to testing would not be coercive because Won would have no right to refuse to consent to a breath test.

The Hawai'i Supreme Court's analysis in Won of the "search incident to arrest" exception to the warrant requirement differs from that of the United States Supreme Court in Birchfield, and the Hawai'i Supreme Court is free to give broader protection under the Hawai'i Constitution than given by the United States Constitution. State v. Viglielmo, 105 Hawai'i 197, 211, 95 P.3d 952, 966 (2004). Without additional guidance from

the Hawai'i Supreme Court, we cannot say that <u>Birchfield</u> would alter the Hawai'i Supreme Court's analysis in <u>Won</u>. Based on the analysis in <u>Won</u>, the State could not prosecute Wilson for Refusal to Submit to Testing. We therefore reverse Wilson's Refusal to Submit to Testing conviction.

II.

Wilson challenges her OVUII conviction on the ground that the District Court committed plain error in accepting her stipulation that Officer Hattori was qualified to administer field sobriety tests. Wilson claims that the District Court could not accept this stipulation because it failed to engage in a colloquy with her to ensure that she personally approved of the stipulation. We reject Wilson's colloquy argument.

A.

Prior to calling Officer Hattori as its first witness, the State advised the District Court that the parties had reached a stipulation that Officer Hattori was qualified to administer field sobriety tests and placed the content of the stipulation on the record:

> [Prosecutor]: . . . . [A]fter discussing this case with the Public Defender, at this time I believe we're going to stipulate to Officer Hattori's training, that he followed the standards and guidelines and requirements of the [National Highway Traffic Safety Administration (NHTSA)] Manual. It was supervised by a NHTSA Certified Instructor.
>
> Officer Hattori's qualified and certified to conduct the standard -- standardized field sobriety tests and that he received specialized training in administering and grading all of the standard field sobriety tests.

Wilson's counsel did not dispute the prosecutor's representation and the District Court accepted the stipulation to Officer Hattori's qualifications.

B.

As part of the trial process and strategy, parties routinely stipulate to matters relating to a witness's qualifications or competency, foundation for testimony, and the

admissibility of exhibits. Such stipulations serve to make the trial process more efficient by avoiding time-consuming and needless presentation of evidence on matters that are undisputed or for which objection is viewed as unnecessary or unwarranted. To require the trial judge to engage in a colloquy with a criminal defendant on every stipulation presented in a case, and to give the defendant veto power over every stipulation agreed to by his or her counsel, would burden the trial process and interfere with the role of defense counsel to exercise appropriate judgment in trial tactics and procedure.

In State v. El'Ayache, 62 Haw. 646, 618 P.2d 1142 (1980), the Hawai'i Supreme Court recognized these concerns and rejected the defendant's claim that the trial court erred in admitting stipulations regarding witness testimony without first determining whether the defendant had knowingly and voluntarily waived her constitutional right to confront and cross-examine the witnesses. In support of its holding, the supreme court reasoned:

> The right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process.
>
> Indubitably, one of the legitimate interests in the criminal trial process is the right of defense counsel to make an appropriate judgment on the trial tactics and procedure to be employed in defense of his client based upon his knowledge of the facts and law of the case; another is the expeditious manner in which the criminal trial is conducted. The decision whether to call a witness or not in a criminal trial is normally a matter within the judgment of counsel and, accordingly, will rarely be second-guessed by judicial hindsight.

El'Ayache, 62 Haw. at 649, 618 P.2d at 1144 (citations omitted).

Wilson cites State v. Murray, 116 Hawai'i 3, 169 P.3d 955 (2007), in arguing that the District Court erred in failing to engage her in a colloquy regarding the stipulation to Officer Hattori's qualifications. Wilson's reliance on Murray is misplaced. In Murray, the supreme court imposed a colloquy

16

requirement where the defendant stipulated to an essential element of the charged offense. Murray, 116 Hawai‘i at 10-14, 169 P.3d at 962-66. Murray did not hold that the trial court must engage the defendant in a colloquy for every single stipulation agreed to by the parties. Id.

Here, the stipulation that Officer Hattori was qualified to administer field sobriety tests did not constitute a stipulation to an essential element of the OVUII offense. Rather, it was the type of stipulation routinely entered into by parties in criminal cases to avoid the unnecessary consumption of time. Wilson makes no showing that absent the stipulation, the State would have been unable to establish Officer Hattori's qualifications to administer field sobriety tests. Officer Hattori testified and was subject to cross-examination by Wilson. We conclude that the District Court was not required to engage in a colloquy with Wilson before accepting the stipulation regarding Officer Hattori's qualifications. Thus, Wilson is not entitled to overturn her OVUII conviction based on her colloquy claim.

CONCLUSION

Based on the foregoing, we affirm the District Court's Judgment with respect to Wilson's OVUII conviction and reverse the Judgment with respect to Wilson's conviction for Refusal to Submit to Testing.

On the briefs:

James Manjiro Yuda
James S. Tabe
Deputy Public Defenders
for Defendant-Appellant

Richard K. Minatoya
Deputy Prosecuting Attorney
County of Maui
for Plaintiff-Appellee

*Craig H. Nakamura*