**NOT FOR PUBLICATION IN WEST'S HAWAI‘I REPORTS AND PACIFIC REPORTER**

**Electronically Filed
Intermediate Court of Appeals
CAAP-19-0000465
05-JUN-2020
07:49 AM**

NO. CAAP-19-0000465

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI‘I


STATE OF HAWAI‘I, Plaintiff-Appellant,
v.
MICAH VASCONCELLOS, Defendant-Appellee


APPEAL FROM THE DISTRICT COURT OF THE FIRST CIRCUIT
HONOLULU DIVISION
(CASE NO. 1DTA-18-02776)


SUMMARY DISPOSITION ORDER
(By: Leonard, Presiding Judge, Chan and Hiraoka, JJ.)

Plaintiff-Appellant State of Hawai‘i (State) appeals from the Notice of Entry of Judgment and/or Order and Plea/Judgment (Judgment), filed on May 28, 2019, in the District Court of the First Circuit, Honolulu Division (district court),[1] which granted Defendant-Appellee Micah Vasconcellos's (Vasconcellos) Motion to Suppress Statements.

On appeal, the State contends that the district court erred in granting the Judgment and in concluding that there was a custodial interrogation at the point police stopped Vasconcellos's vehicle or when they observed Vasconcellos's bloodshot eyes, slurred speech, and the odor of alcohol, and that

---

[1] The Honorable Summer Kupau-Odo presided.

police were required to provide Vasconcellos with <u>Miranda</u>[2] warnings at those points. The State more particularly argues that: (1) probable cause to arrest Vasconcellos for Reckless Driving, in violation of Hawaii Revised Statutes (HRS) § 291-2 (2007),[3] did not exist at the time he was stopped; (2) probable cause to arrest Vasconcellos for Operating a Vehicle Under the Influence of an Intoxicant (OVUII), in violation of HRS § 291E-61(a)(1) (Supp. 2018),[4] did not exist at the time the police officer initially observed Vasconcellos's bloodshot eyes, slurred speech, and the odor of alcohol; and therefore (3) <u>Miranda</u> warnings were not required at those points because Vasconcellos was not in custody or subjected to interrogation. Thus, the

---

[2]    <u>Miranda v. Arizona</u>, 384 U.S. 436 (1966).

> A critical safeguard [of the privilege against self-incrimination] is the *Miranda* warning: an accused must be "warned that he or she had a right to remain silent, that anything said could be used against him or her, that he or she had a right to the presence of an attorney, and that if he or she could not afford an attorney one would be appointed for him or her."

<u>State v. Kazanas</u>, 138 Hawaiʻi 23, 34, 375 P.3d 1261, 1272 (2016) (quoting <u>State v. Ketchum</u>, 97 Hawaiʻi 107, 116, 34 P.3d 1006, 1015 (2001)).

[3]    HRS § 291-2 provides:

> **§291-2 Reckless driving of vehicle or riding of animals; penalty.**  Whoever operates any vehicle or rides any animal recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle or reckless riding of an animal, as appropriate, and shall be fined not more than $1,000 or imprisoned not more than thirty days, or both.

[4]    HRS § 291E-61(a)(1) provides:

> **§291E-61 Operating a vehicle under the influence of an intoxicant.**  (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
>
> > (1)    While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty[.]

State argues that Vasconcellos's responses to being informed of why he was stopped, to the medical rule-out questions, and to whether he was willing to participate in field sobriety tests, as well as Vasconcellos's actual performance on the field sobriety tests, should not have been suppressed.

Upon careful review of the record and the briefs submitted by the parties and having given due consideration to the arguments advanced and the issues raised by the parties, as well as the relevant statutory and case law, we affirm in part, vacate in part, and remand for the reasons set forth below.

> The proponent of the motion to suppress has the burden of establishing, by a preponderance of the evidence, that the statements or items sought to be excluded were unlawfully secured and that his or her right to be free from unreasonable searches or seizures was violated under the fourth amendment to the United States Constitution and article I, section 7 of the Hawaiʻi Constitution.

State v. Estabillio, 121 Hawaiʻi 261, 269, 218 P.3d 749, 757 (2009) (citations omitted). A ruling on a motion to suppress is reviewed *de novo*, and the appellate court must look at the entire record on appeal to determine whether the ruling was right or wrong. State v. Joseph, 109 Hawaiʻi 482, 493, 128 P.3d 795, 806 (2006).

> Where an individual is being subjected to custodial interrogation, he [or she] may not be asked any questions without his [or her] first being advised of his [or her] right to remain silent, that anything he [or she] says can and will be used against him [or her], that he [or she] has the right to have his [or her] attorney present, and that if he [or she] cannot afford counsel, one will be appointed for him [or her] prior to any interrogation. Miranda v. Arizona, 384 U.S. 436, 467-474, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); State v. Santiago, 53 Haw. 254, 492 P.2d 657 (1971). "Custodial interrogation" means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his [or her] freedom of action in any significant way." 384 U.S. at 444.

State v. Kalai, 56 Haw. 366, 368, 537 P.2d 8, 11 (1975) (emphasis omitted).

Custodial interrogation consists of two components: "interrogation" and "custody." Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273.

> In determining whether the defendant's statement was made in a custodial context, the totality of circumstances must be considered, including the time, place and length of the interrogation, the nature of the questions asked, the conduct of the police at the time of the interrogation, and any other pertinent factors.

Id. (emphasis omitted) (quoting State v. Paahana, 66 Haw. 499, 502-03, 666 P.2d 592, 595-96 (1983)); see State v. Melemai, 64 Haw. 479, 481, 643 P.2d 541, 544 (1982) (stating that whether a defendant was in custody or otherwise deprived of his or her freedom of action in any significant way is determined by objectively appraising the totality of the circumstances). "In this regard, we have acknowledged that 'no precise line can be drawn' between 'custodial interrogation,' on the one hand, and 'permissible general on-the-scene questioning,' on the other." State v. Ah Loo, 94 Hawaiʻi 207, 210, 10 P.3d 728, 731 (2000) (brackets omitted) (quoting State v. Patterson, 59 Haw. 357, 362, 581 P.2d 752, 755-56 (1978)).

In contrast, "determining whether 'interrogation' has taken place is not measured by the 'totality of the circumstances,'" Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273, but rather, "the touchstone . . . is whether the police officer 'should have known that his or her words and actions were reasonably likely to elicit an incriminating response from the defendant.'" Id. at 38, 375 P.3d at 1276 (brackets omitted) (quoting Paahana, 66 Haw. at 503, 666 P.2d at 595-96).

In Ah Loo, the supreme court stated:

> [W]e reaffirm the principle that, when an officer lawfully "seizes" a person in order to conduct an investigative stop, the officer is not required to inform that person of his or her Miranda rights before posing questions that are reasonably designed to confirm or dispel--as briefly as possible and without any coercive connotation by either word or conduct--the officer's reasonable suspicion that criminal activity is afoot.

94 Hawaiʻi at 212, 10 P.3d at 733. This is because, as a *per se* matter, a defendant is not "in custody" for purposes of Miranda merely because he or she has been "seized" or pulled over pursuant to a valid traffic stop. State v. Kaleohano, 99 Hawaiʻi

4

370, 376, 56 P.3d 138, 144 (2002) (citing Ah Loo, 94 Hawaiʻi at 212, 10 P.3d at 733). "[I]f neither probable cause to arrest nor sustained and coercive interrogation are present, then questions posed by the police do not rise to the level of 'custodial interrogation' requiring Miranda warnings." Id. at 377, 56 P.3d at 145 (quoting Ah Loo, 94 Hawaiʻi at 210, 10 P.3d at 731). Further, when a defendant's statements are not the product of a custodial interrogation, it need not be shown that the defendant was advised of his or her Miranda rights and waived those rights, in order for the statements to be admitted into evidence. State v. Pahio, 58 Haw. 323, 327, 568 P.2d 1200, 1204 (1977), abrogated on other grounds by State v. Cabagbag, 127 Hawaiʻi 302, 277 P.3d 1027 (2012).

> HRS § 291-2 provides:
>> Whoever operates any vehicle or rides any animal recklessly in disregard of the safety of persons or property is guilty of reckless driving of vehicle or reckless riding of an animal, as appropriate, and shall be fined not more than $1,000 or imprisoned not more than thirty days, or both.

The supreme court in State v. Agard, 113 Hawaiʻi 321, 322, 151 P.3d 802, 803 (2007) stated:

> We hold that (1) the reckless state of mind definition under HRS § 702-206(3) (1993) applies to the reckless driving statute, HRS § 291-2; (2) in determining whether an identified risk is substantial and unjustifiable under HRS § 702-206(3), the nature and degree of the risk disregarded by the actor, the nature and purpose of his conduct, and the circumstances known to him in acting must be weighed; (3) in this case a reckless state of mind can be inferred from the circumstances to conclude that there was conscious awareness of a substantial and unjustifiable risk to the safety of others and property on the part of Respondent; and (4) deference must be given to the trier of fact with respect to questions of credibility and weight of the evidence.

In other words, it must be shown that the "Defendant knew whether 'the safety of persons or property' was in peril." State v. Quinn, No. 30111, 2010 WL 2675349, at *1 (Haw. App. July 7, 2010) (SDO) (quoting State v. Moleta, 112 Hawaiʻi 233, 240, 145 P.3d 776, 783 (App. 2006)).

At the hearing on Vasconcellos's Motion to Suppress Statements, Officer Borges testified that he had observed

Vasconcellos make an improper left turn from a straight ahead only lane and nearly strike a pedestrian in a marked crosswalk with the cross signal, without stopping, swerving, or slowing. Officer Borges then stated that upon stopping Vasconcellos's vehicle, he approached the vehicle and engaged Vasconcellos, explaining his observations to Vasconcellos. When Officer Borges informed him of why he was stopped, Vasconcellos initially stated that he saw the pedestrian and stopped. Thereafter, Officer Borges related to Vasconcellos that he did not observe him stop and Vasconcellos then stated that he swerved or drove around and let the pedestrian cross. We conclude that at this initial point of the stop, a person of reasonable caution would have been warranted in believing that Vasconcellos had a conscious awareness that his driving had posed a substantial and unjustifiable risk to the safety of others and property, to wit, the pedestrian. See HRS § 291-2; Agard, 113 Hawaiʻi at 322, 151 P.3d at 803; State v. Maganis, 109 Hawaiʻi 84, 86, 123 P.3d 679, 681 (2005) ("Probable cause exists when the facts and circumstances within one's knowledge and of which one has reasonably trustworthy information are sufficient in themselves to warrant a person of reasonable caution to believe that an offense has been committed. This requires more than a mere suspicion but less than a certainty." (Emphasis and citation omitted)). Accordingly, the district court did not err in concluding that Officer Borges had probable cause to arrest Vasconcellos for Reckless Driving at the point of stopping his vehicle.

Based on the totality of the circumstances, where Officer Borges had probable cause to arrest Vasconcellos for Reckless Driving and had testified that Vasconcellos was not free to leave at this point, we conclude that Vasconcellos was in custody for Reckless Driving. See Kazanas, 138 Hawaiʻi at 35, 375 P.3d at 1273; Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145. Thus, Miranda warnings were warranted prior to any subsequent

interrogation. The district court did not err in determining that Vasconcellos was in custody upon Officer Borges stopping his vehicle.

Notwithstanding the above, Officer Borges was not required to provide Vasconcellos with Miranda warnings prior to informing Vasconcellos of why he was stopped. As we recently held in State v. Sagapolutele-Silva, "[g]enerally, informing a defendant of the reason for being stopped or arrested does not constitute custodial interrogation likely to elicit an incriminating response." No. CAAP-19-0000491, 2020 WL 1699907, at *9 (Haw. App. Apr. 8, 2020) (citations omitted); see Rhode Island v. Innis, 446 U.S. 291, 301 (1980) (holding that the term "interrogation" does not include "words or actions on the part of the police [that are] normally attendant to arrest and custody"); United States v. Moreno-Flores, 33 F.3d 1164, 1169 (9th Cir. 1994) ("[W]hen an officer informs a [suspect] of [the] circumstances" of his arrest or explains evidence against him, "this information may be considered normally attendant to arrest and custody." (quoting United States v. Crisco, 725 F.2d 1228, 1232 (9th Cir. 1984))). Officer Borges informing Vasconcellos of why he was stopped did not amount to an "interrogation" and Miranda warnings were not required. The district court erred in holding that there was an interrogation at this point and suppressing the aforementioned statements Vasconcellos made in response to being informed of the reason that he was stopped.

During the exchange with Vasconcellos, Officer Borges observed that Vasconcellos had bloodshot eyes, was speaking with slurred speech, and had an odor of alcohol about him. Thus, Officer Borges's attention turned to whether Vasconcellos committed the offense of OVUII. The investigation for OVUII constituted a separate, distinct, and unrelated investigation from the initial traffic stop, requiring an independent reasonable suspicion to be a valid detainment. See Estabillio, 121 Hawaiʻi at 272-73, 218 P.3d at 760-61 (stating that an

investigation for drug involvement constituted a separate, distinct, and unrelated investigation from the initial stop for traffic offenses, thus requiring an independent reasonable suspicion to be a constitutional seizure).

There was reasonable suspicion to believe that Vasconcellos committed the offense of OVUII based upon Officer Borges's observations of Vasconcellos's driving, his red and bloodshot eyes, and the smell of alcohol about him.  See State v. Barrickman, 95 Hawaiʻi 270, 274-77, 21 P.3d 475, 479-82 (App. 2001) (concluding that there was reasonable suspicion to believe that the defendant was driving while intoxicated at the time the investigative stop commenced because the defendant failed to follow the instructions of the officer directing traffic and was observed to have glassy eyes and alcohol on his breath). Nonetheless, red and glassy eyes alone, and imperfect driving, are insufficient to establish probable cause to arrest a person for OVUII.  See Kaleohano, 99 Hawaiʻi at 377, 56 P.3d at 145 ("Although these factors may give rise to a reasonable suspicion that [a person] was driving while impaired, they do not amount to probable cause for an arrest.").  In Kernan, the court noted:

> Usually, the police administer a field sobriety test consisting of specific procedures when a driver has been stopped as a DUI suspect.  If a driver does not exit voluntarily, the police must order him or her out of the vehicle even though probable cause to arrest may not have been established.  Should the suspect fail the test, an arrest will ensue.  Thus, it is the test failure that provides the police with probable cause to arrest.  We do not require the police to have probable cause to arrest prior to the administration of the field sobriety test because such a requirement unduly burdens law enforcement.

75 Haw. at 38 n.23, 856 P.2d at 1226 n.23.  Thus, prior to asking whether Vasconcellos wished to take the field sobriety test, Vasconcellos's red and bloodshot eyes, slurred speech, and the odor of alcohol about him did not provide Officer Borges with probable cause for an OVUII arrest.  The district court therefore erred in determining that there was probable cause to arrest Vasconcellos for OVUII at this point.  However, as we previously

stated, Vasconcellos was in custody for Reckless Driving and the district court did not err in determining that he was in custody and that <u>Miranda</u> warnings were warranted prior to any interrogation.

After observing Vasconcellos's red and bloodshot eyes, slurred speech, and odor of alcohol about him, Officer Borges asked Vasconcellos to step out of his vehicle. Vasconcellos then exited the vehicle and Officer Borges asked him whether he would be willing to participate in a field sobriety test. Vasconcellos responded to the effect of "please don't do this. You're ruining my life" and then later agreed to participate. The district court held that asking Vasconcellos if he would be willing to participate in a field sobriety test constituted custodial interrogation and suppressed Vasconcellos's responses. This was in error. In <u>Pennsylvania v. Muniz</u>, the Supreme Court determined that a police officer's questioning of a defendant regarding whether the defendant understood the field sobriety test instructions and wished to submit to the test did not amount to an "interrogation" because they were "limited and focused inquiries [that] were necessarily 'attendant to' the legitimate police procedure and were not likely to be perceived as calling for any incriminating response." 496 U.S. 582, 605 (1990) (citation omitted); <u>see</u> <u>Innis</u>, 446 U.S. at 301 (holding that the term "interrogation" does not include "words or actions on the part of the police [that are] normally attendant to arrest and custody"). Vasconcellos's responses to whether he would participate in the test were attendant to legitimate police procedures, and should not have been suppressed.

Upon Vasconcellos's agreement to participate in the field sobriety tests, Officer Borges asked him what are known as medical rule-out questions. Officer Borges testified that the medical rule-out questions consisted of inquiring whether Vasconcellos "had any physical defects or speech impediments, if he's currently under the care of a doctor, an eye doctor, or a

9

dentist, if he was diabetic or epileptic, if he was blind in either eye, wearing any contacts, or taking any medications." Vasconcellos replied in the negative to all of the medical rule-out questions. The district court suppressed Vasconcellos's responses to the medical rule-out questions, finding that Vasconcellos was in custody and that the questions would elicit incriminating responses. We agree with the district court. The medical rule-out questions amounted to an interrogation because they

> required a testimonial response that disclosed facts relating to the offense of OVUII and that was reasonably likely to assist the police in determining whether [the suspect] was under the influence of an intoxicant by either admitting or denying there were other causes that could explain her actions. A negative response to all of the questions is testimonial, and combined with physical characteristics of impairment, supports an incriminating inference of impairment. Similarly, a positive response to whether a defendant is taking any medicines, in some instances, may constitute an incriminating statement.

Sagapolutele-Silva, No. CAAP-19-0000491, 2020 WL 1699907, at *8; see also Mathis v. United States, 391 U.S. 1, 2, 4-5 (1968). Although Vasconcellos was not in custody for OVUII when the medical rule-out questions were posed, he was in custody for Reckless Driving. As we determined in Sagapolutele-Silva, "the failure to provide a Miranda warning when required for one crime will taint a subsequent interrogation even if the interrogation relates to a different crime for which Miranda warnings were not yet required, if a defendant is still in custody." Id. at *7 (citing People v. Bejasa, 205 Cal. App. 4th 26, 140 Cal. Rptr. 3d 80, 91 (2012)). Accordingly, Vasconcellos was subjected to a custodial interrogation without having first been given Miranda warnings. Thus, the district court did not err in suppressing Vasconcellos's responses to the medical rule-out questions.

We next turn to the suppression of the results of the field sobriety test. "Field sobriety tests are designed and administered to avoid the shortcomings of casual observation." State v. Wyatt, 67 Haw. 293, 302, 687 P.2d 544, 551 (1984)

(brackets and citations omitted). Although field sobriety tests may have a purpose of gathering evidence of a driver's criminal conduct, "the privilege against self-incrimination is not necessarily implicated whenever a person suspected of criminal activity is compelled in some way to cooperate in developing evidence which may be used against him [or her]." Id. In Wyatt, the supreme court held that a suspect's performance on field sobriety tests was an exhibition of physical characteristics of coordination. Id. at 303, 687 P.2d at 551. The Wyatt court further held that a suspect's performance on field sobriety tests were neither communication nor testimony and therefore did not implicate the suspect's right against self-incrimination. Id. at 301-03, 687 P.2d at 550-51. Applied here, the district court therefore erred in suppressing Officer Borges's observations of Vasconcellos's physical performance on the field sobriety test.

As an alternative basis for the district court's Judgment, Vasconcellos argues, based on State v. Tsujimura, 140 Hawaiʻi 299, 400 P.3d 500 (2017), that the right to remain silent is triggered upon detainment as a result of an investigatory stop, Miranda warnings are required at that time, and thus any statements obtained thereafter without Miranda warnings and a waiver of Miranda rights are subject to suppression. Vasconcellos's reliance upon Tsujimura is misplaced. In Tsujimura, the court noted that it is a "well established tenet that a person being questioned by a law enforcement officer during an investigatory stop 'is not obliged to respond.'" Tsujimura, 140 Hawaiʻi at 313, 400 P.3d at 514 (quoting Berkemer v. McCarty, 468 U.S. 420, 439, 104 S. Ct. 3138, 82 L. Ed.2d 317 (1984)). However, Tsujimura does not require a law enforcement officer to advise a person of their right to remain silent because they were detained as a result of an investigatory stop. Rather, it prohibits pre-arrest silence from being used as substantial proof of guilt at trial. Tsujimura, 140 Hawaiʻi at 311-13, 400 P.3d at 512-14.

Based on the foregoing, the district court erred in suppressing: (1) Vasconcellos's statements in response to Officer Borges informing him of the reasons for the investigatory stop; (2) Vasconcellos's responses to being asked whether he would participate in the field sobriety test; and (3) the results of the field sobriety test.  The district court did not err in suppressing Vasconcellos's responses to the medical rule-out questions.

The Notice of Entry of Judgment and/or Order and Plea/Judgment, filed on May 28, 2019, in the District Court of the First Circuit, Honolulu Division, is vacated in part and affirmed in part.  This case is remanded for further proceedings.

DATED:  Honolulu, Hawaiʻi, June 5, 2020.

On the briefs:

Brian R. Vincent,
Deputy Prosecuting Attorney,
City and County of Honolulu,
for Plaintiff-Appellant.

Alen M. Kaneshiro,
for Defendant-Appellee.

/s/ Katherine G. Leonard
Presiding Judge


/s/ Derrick H. M. Chan
Associate Judge


/s/ Keith K. Hiraoka
Associate Judge